594 A.2d 847

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF HEALTH, Petitioner,**

v.

**Amaike J. NWOGWUGWU, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1991.
Decided July 1, 1991.

34

David A. Kappel, Asst. Counsel, Harrisburg, for petitioner.

Debra K. Wallet, Camp Hill, for respondent.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

KELLEY, Judge.

The Department of Health (DOH) appeals from an order of the State Civil Service Commission (commission) which sustained the appeal of Amaike J. Nwogwugwu (respondent) and ordered that he be reinstated in the probationary position from which he had been removed. We reverse.

Respondent was employed by DOH as a probationary Public Health Program Representative I (PHPR I) for the HIV Prevention Program, from January 4, 1989 until October 16, 1989, and assigned to the southeastern headquarters at Reading. Respondent is a black male of Nigerian birth

and is a permanent resident of the United States. The duties of a PHPR I include interviewing persons who have tested positive for human immunodefiency virus (HIV) or other sexually transmitted diseases (STD's), and attempting to locate their sexual or needle-sharing partners for the purpose of informing the partners of the risk of infection and advising them to be examined. Persons hired as a PHPR I are given twelve months of both formal and on-the-job training, including a two-week training session sponsored by the Centers for Disease Control (CDC).

On October 16, 1989, DOH removed respondent from his probationary position, charging:

    a.  intolerance and insensitivity toward clients, as well as other health service personnel;

    b.  reluctance or inability to demonstrate an understanding of required practices and procedures;

    c.  inability to perform assigned tasks within acceptable time frames; and

    d.  inability to relate to STD/HIV clients or to discuss sexually oriented issues in an acceptable manner.

Commission's Adjudication, Finding of Fact No. 1.

Respondent appealed his removal to the commission, alleging that he had received inadequate training and supervision, which was motivated by discrimination based on race and national origin in violation of Section 905.1 of the Civil Service Act (Act).[1] Following a hearing, the commission sustained the appeal and ordered respondent returned to duty with full back pay.[2] This appeal followed.

■ Our scope of review in civil service cases is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence.

1. Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1–741.1005.

2. The commission's vote was 2–1, with a dissent by Commissioner Elizabeth Kury, who would have dismissed the appeal.

*Ross v. Civil Service Commission,* 98 Pa. Commonwealth Ct. 565, 511 A.2d 941 (1986).

As a probationary employee, Section 603(a) of the Act, 71 P.S. § 741.603, provides in part that:

> At any time during the probationary period, the appointing authority may remove an employee if in the opinion of the appointing authority the probation indicates that such employe is unable or unwilling to perform the duties satisfactorily or that the employe's dependability does not merit continuance in the service.

We have held that a probationary employee "does not enjoy the job security afforded persons on regular status, who may be removed only for just cause." *Cunningham v. State Civil Service Commission,* 17 Pa. Commonwealth Ct. 375, 377, 332 A.2d 839, 840 (1975). However, Section 905.1 of the Act, 71 P.S. § 741.905a,[3] provides in pertinent part that:

> No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action ... because of race, national origin or other non-merit factors.

In analyzing claims of "traditional discrimination" arising under Section 905.1 of the Act,[4] this Court has adopted the standard of proof originally set forth by our Supreme Court in *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987). *Henderson v. Office of the Budget,* 126 Pa. Commonwealth Ct. 607, 560 A.2d 859 (1989), *petition for allowance of appeal denied,* 524 Pa. 633, 574 A.2d 73 (1990).[5]

---

**3.** Added by the Act of August 27, 1963, P.L. 1257.

**4.** "Traditional discrimination" has been held to encompass only those claims of discrimination based on race, sex, national origin, or the like. *See Pronko v. Department of Revenue,* 114 Pa. Commonwealth Ct. 428, 539 A.2d 456 (1988).

**5.** This test is a modified version of the standard of proof developed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Our Supreme

■ This standard of proof first requires that the complainant make out a prima facie case of discrimination, which he does by producing sufficient evidence and, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred. When complainant has made out a prima facie case, a presumption of discrimination arises which, if not rebutted by the appointing authority, becomes determinative of the factual issue of the case. *Id.*, 126 Pa.Commonwealth Ct. at 614, 560 A.2d at 863.

■ Here, respondent testified that he had not received sufficient training to enable him to carry out his duties, and that this lack of training was because his supervisor was "uncomfortable working with him because of his non-American citizenship." [6] While we have not previously addressed a case based on the theory of "discriminatory training", we are persuaded by the express inclusion of the word "training" in the text of Section 905.1 and by analogous federal decisions decided under the Civil Rights Act of 1964 (Title VII) that a case brought under such a theory would be appropriate assuming, of course, that complainant can prevail on the merits. *See, e.g., Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 109 (1st Cir.1988).[7]

We have previously stated that the burden of establishing a prima facie case cannot be an onerous one. *Henderson*, 126 Pa. Commonwealth Ct. at 616, 560 A.2d at 864. If believed and otherwise unexplained, the conduct alleged by respondent would be sufficient to make out a prima facie case of discrimination under Section 905.1.

Court adopted it for use in claims brought under the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–962.2, while this Court in *Henderson* announced its application prospectively in civil service claims arising under Section 905.1.

6. Notes of Testimony (N.T.) at 39, 41.

7. Although the *Oliver* court affirmed a grant of summary judgment in favor of the employer, it noted that "had Oliver presented evidence that his training was indeed different from that of others ... then we might find Oliver entitled to proceed beyond this point." *Id.*

■ The inquiry, however, does not end here. When the initial burden of proof is met, the burden of production shifts to the appointing authority to clearly advance a legitimate non-discriminatory reason for removal through the introduction of admissible evidence. *Id.*, 126 Pa.Commonwealth Ct. at 616, 560 A.2d at 864. As we stated in *Henderson:*

> This burden of production does not require an employer ... to persuade the factfinder that it was actually motivated by the proffered reason or reasons. All that is required is that the employer's evidence raise a genuine issue of fact as to whether it discriminated against the complainant.

*Id.* (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Here, DOH presented numerous merit factors for respondent's dismissal and presented both testimonial and documentary evidence thereof. Therefore, DOH has clearly advanced legitimate non-discriminatory reasons for removal through the introduction of admissible evidence, and has rebutted the presumption of discrimination raised by respondent's prima facie case.

■ Once the prima facie case is rebutted, the presumption of discrimination drops from the case. The complainant, who retains the burden of persuasion throughout must then demonstrate, by a preponderance of the evidence, that the proffered merit reason for dismissal is merely a pretext. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95. In other words, the complainant must prove that his dismissal was motivated by non-merit or discriminatory factors. *Snipas v. Department of Public Welfare,* 46 Pa. Commonwealth Ct. 196, 405 A.2d 1366 (1979). The complainant "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■    Respondent's claim rested on allegations of improper training and inadequate supervision by his supervisor, Phyllis Britz.  The commission listed the following reasons in support of its finding of discrimination:

1.  Britz spent too little time with the appellant during his training;

2.  Britz spent a disproportionately greater amount of time with another employe similarly situated to the appellant;

3.  the appellant was not adequately supervised;

4.  Britz failed to send the appellant to CDC training until six months after he started work, while she sent another similarly situated employe, two months after she was hired;

5.  Britz failed to introduce the appellant to others in attendance at the Pottsville meeting;  and,

6.  after recommending remedial action in the appellant's performance review, Britz failed to provide appropriate guidance in the ensuing four weeks of the appellant's employment.

The commission concluded that "[t]he shortcomings of the appointing authority's performance in training the appellant do not seem to us to be isolated incidents, but rather show a pattern of neglect towards the appellant's training that can be construed as discriminatory."  Had respondent met his burden of proving his individual allegations, we have no doubt that the commission's conclusion would have been a permissible inference.  Because we find that respondent failed to prove his individual allegations, however, we must reverse.

■    It is normally incumbent upon a complainant in a disparate treatment case to compare his treatment with others similarly situated in order to prove discrimination. *See* Rand, *An Examination of Discrimination under the Pennsylvania Civil Service Act,* 25 DUQ.L.REV. 209, 240

(1987), and cases cited therein.[8] The commission's findings that Britz spent too little time with respondent and that respondent was not adequately supervised may well be true as a general proposition; however, respondent introduced no evidence to compare his treatment with that of others similarly situated. These findings, therefore, cannot support a finding of discrimination.

Finding No. 4 does purport to compare respondent's treatment with that of another similarly situated employee. A review of the testimony, however, reveals that respondent's attendance at the CDC training was delayed for some six months because he had failed to complete the required training modules, while the other probationary employee had completed her modules in the recommended time period and was, therefore, eligible to attend the CDC training. Respondent was hired in January, completed the training modules in June, and attended the CDC training in July. Britz testified that all new employees hired after December of 1988 were scheduled for the July training, which was held in Pennsylvania.[9] Linda Davis, the probationary employee to whom respondent seeks to compare his treatment, was hired in July of 1989, and sent to CDC training in September following successful completion of her training modules, solely because a cancellation in the training program had arisen. The attempted comparison with Davis cannot support a finding of discrimination since respondent and Davis were not "similarly situated."

The commission's Finding No. 2 also seeks to compare respondent's treatment with that of Linda Davis. The record reveals, however, that the alleged discrimination

8. The commission's regulations also require that appeals alleging discrimination must include specific facts detailing how the treatment differs from treatment of others similarly situated. 4 Pa.Code § 105.-12(c)(2). Failure to allege specific facts will result in dismissal of the appeal. Since a complainant must allege specific facts showing disparate treatment from others similarly situated in order to establish his prima facie case and avoid dismissal, it logically follows that when the presumption of discrimination is rebutted by the appointing authority, complainant must prove these same allegations.

9. N.T. at 135.

occurred in the supervision of the training modules, and that Britz was assigned as Davis' module coordinator, while respondent was assigned a different person as coordinator.[10] Respondent presented no evidence as to the amount of supervision he received from his assigned coordinator. Again, the attempted comparison is not with one "similarly situated".

Concerning Britz's failure to introduce appellant at the Pottsville meeting, DOH presented testimony that at least two other DOH employees attending the meeting similarly were not introduced.[11] The commission did not discuss this testimony in its findings of fact, and there is no indication that it was rejected as not credible. Respondent therefore has failed to prove treatment different from others similarly situated.

Finally, while failure to provide appropriate guidance following a poor performance evaluation report may be a poor management practice, respondent failed to introduce evidence which could establish that he was treated any differently in this respect from any other person similarly situated.

We conclude, therefore, that respondent failed to submit sufficient evidence of disparate treatment so as to meet his burden of persuasion under Section 905.1 of the Act. Accordingly, the order of the commission is reversed.

COLINS, J., dissents.

## ORDER

NOW, this 1st day of July, 1991, the order of the State Civil Service Commission, Appeal No. 8686, dated July 10, 1990 is reversed.

---

10. N.T. at 242.
11. N.T. at 104–105, 225–226.