642 A.2d 538

**Melvin E. NEIDIG, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 14, 1994.

Decided May 11, 1994.

68

James P. Johnson, for petitioner.

Robin M. Lewis, Asst. Counsel, for respondent.

Before COLINS and NEWMAN, JJ., and KELTON, Senior Judge.

NEWMAN, Judge.

Melvin E. Neidig (Neidig) appeals from a final order of the State Civil Service Commission (Commission) that sustained the action of the State Correctional Institution at Rockview, Department of Corrections (SCI–Rockview) which demoted Neidig from the position of regular Corrections Officer 3 (Lieutenant) to the position of regular Corrections Officer 1 effective December 8, 1991. We affirm.

Neidig has been employed at SCI–Rockview since July, 1978. On October 17, 1991, Neidig was on duty at the institution's main compound. At approximately 10:30 p.m., Corrections Officer 1 Beckenbaugh (Officer Beckenbaugh) was on duty at the institution's forestry camp which is located 1.3 miles from the main facility. He observed two inmates, Richards and White, who appeared to be intoxicated. He

contacted the institution's control center, and in response, Neidig and Corrections Officer 1 McCrum (Officer McCrum) were dispatched to the camp. When they arrived, Neidig requested that Officer Beckenbaugh point out the two inmates who were suspected of being intoxicated. Officer Beckenbaugh called to the two inmates, and as a result, Inmate White approached Neidig and Officer Beckenbaugh. Inmate White cooperated, and on Neidig's instructions, Officer Beckenbaugh took him into an office trailer for observation.

Neidig and Officer McCrum then approached Inmate Richards. When they attempted to handcuff him, he became violent and began swinging at Neidig. A scuffle ensued and Officer McCrum sustained injuries while restraining Richards to be handcuffed. Eventually, Neidig placed the handcuffs on Richards in front of Richards' body. Neidig instructed Officer Beckenbaugh to call the control center and request that help be sent to the forestry camp immediately.

Inmate Richards was placed in the passenger compartment of a van to be transported to the main institution. A screen divided the driver's compartment from the passenger compartment. Neidig instructed Officer McCrum to take the inmate to the compound while Neidig remained at the forestry camp. Once the van was approximately 100 yards from the camp, Richards began kicking the side of the van and the window. Officer McCrum radioed the control center to advise them of the predicament. Meanwhile, Richards kicked out the window. Officer McCrum then noticed an institution vehicle with additional officers heading toward the camp. He attempted to contact those officers but was unable to because the radio he was using was on a different frequency. Inmate Richards kicked out the window, escaped, and remained at large for three days before being captured by the Pennsylvania State Police.

On November 13, 1991, a pre-disciplinary conference was held to afford Neidig the opportunity to respond to charges of negligence of duty and unsatisfactory work performance with regard to the October 17, 1991 incident. By letter dated December 2, 1991, the superintendent of SCI–Rockview in-

formed Neidig that effective December 8, 1991, he would be demoted to the position of Corrections Officer 1.

Neidig filed a timely appeal of the demotion to the Commission pursuant to Section 951(a) of the Civil Service Act (Act).[1] On July 16, 1992, a hearing was held before the Commission. On July 28, 1993, the Commission issued an adjudication and order dismissing the appeal and sustaining the action of SCI–Rockview. The Commission concluded that Neidig was properly demoted under Section 706 of the Act, 71 P.S. § 741.706, which provides that an appointing authority may demote to a vacant position in a lower class any employee who does not satisfactorily perform the duties of the position to which he was appointed. Neidig appealed the Commission's order to this court.

The following issues are presented on appeal: (1) whether the Commission made sufficient findings of fact based on substantial evidence to uphold Neidig's demotion for negligence or unsatisfactory work performance; and (2) whether the Commission committed an error by limiting testimony of Neidig's experience and job performance to the date of the incident in question, October 17, 1991, when the issue before the Commission should have been Neidig's overall job performance, which is alleged to have been good before the event in question.[2]

■ With respect to the first issue, Neidig asserts that the Commission's determination that he acted negligently by

1. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.951(a), which provides:

> Any regular employe in the classified service may, within twenty calendar days of receipt of notice from the appointing authority, appeal in writing to the commission. Any permanent separation, suspension for cause, furlough or demotion on the grounds that such action has been taken in his case in violation of the provisions of this act, upon receipt of such notice of appeal, the commission shall promptly schedule and hold a public hearing.

2. Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Mihok v. Department of Public Welfare*, 147 Pa.Commonwealth Ct. 344, 607 A.2d 846 (1992).

handcuffing the inmate in the front, and that he performed his duties unsatisfactorily by sending only one officer with the inmate while he was being transported to the main compound, was not supported by substantial evidence. We disagree.

Substantial evidence needed to support a finding of the Commission is such relevant evidence as a reasonable mind, without weighing the evidence or substituting its judgment for that of the Commission, might deem adequate to support a conclusion. *Western Center, Department of Public Welfare v. Hoon,* 143 Pa.Commonwealth Ct. 212, 598 A.2d 1042 (1991).

In an appeal challenging the demotion of a regular status employee, the burden lies with the appointing authority to demonstrate that the employee did not satisfactorily perform the duties of the position from which he was demoted. *West v. Department of Public Welfare,* 150 Pa.Commonwealth Ct. 59, 614 A.2d 357 (1992).

At the July 16, 1992 hearing, the Department of Corrections (Appointing Authority) presented the testimony of Lieutenant John Kephart, a corrections officer at SCI–Rockview. Lieutenant Kephart testified that the most effective method of restraining an assaultive inmate is to handcuff him behind his back, thus limiting his mobility. He further testified that there are situations where an inmate cannot be handcuffed behind the back. In those instances, additional precautions must be taken. Referring to the transfer of Inmate Richards from the forestry camp to the institution, Lieutenant Kephart stated, "I would have went with him myself or had additional help to go with him, transporting him or escorting him back, due to the fact that he was assaultive and had already given us problems." (N.T. July 16, 1992, 74).

The Appointing Authority also presented the testimony of Anthony DeAngelo, Deputy Superintendent for Operations at SCI–Rockview. He is an expert in the field of correctional security practices. Deputy Superintendent DeAngelo testified that under the circumstances, it was against security principles not to wait for help before having an assaultive inmate transported to the compound. He further testified, "Under

normal procedures, when the inmate isn't acting out and you go off grounds, you take two officers. In this case, with the assault and in the nighttime and everything else that had already occurred, it would be almost unthinkable to do that with one person." (N.T. 132–133).

Neidig testified that as far as he knew, it was normal institutional policy to handcuff prisoners in the front. He further testified that it was necessary to remove Inmate Richards from the camp at once in order to separate him from the other inmates. However, neither Officer Beckenbaugh nor Officer McCrum heard anything that indicated that the other inmates were going to cause an emergency situation. Officer McCrum, Officer Beckenbaugh, Lieutenant Kephart and Deputy Superintendent DeAngelo all testified that it was the policy at SCI–Rockview to use more than one officer when transporting inmates from one location to another off the prison compound.

Based upon the aforementioned relevant evidence, we conclude that the Commission's finding that Neidig acted negligently and performed his duties unsatisfactorily is supported by substantial evidence.

■■ With respect to the second issue, Neidig asserts that the Commission erred by limiting testimony regarding Neidig's experience and good job performance to the date of the incident in question. We disagree. Evidence is relevant if it tends to establish facts in dispute. *Monaci v. Workmen's Compensation Appeal Board (Ward Trucking)*, 116 Pa.Commonwealth Ct. 172, 541 A.2d 60 (1988). The issue before the Commission was whether Neidig's actions on October 17, 1991, constituted negligence and unsatisfactory performance of duties. Therefore, we conclude that the Commission was not required to admit evidence regarding past performance.

Accordingly, the order of the Commission is affirmed.

### ORDER

AND NOW, May 11, 1994, the order of the State Civil Service Commission in the above-captioned matter is affirmed.